# In the United States Court of Federal Claims

THE QED GROUP LLC d/b/a Q2 IMPACT,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 24-1961C
Filed August 5, 2025

Ryan C. Bradel, Ward & Berry, PLLC, Washington, DC, for plaintiff.
Grant D. Johnson, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Denying Q2 Impact's Motion for Attorney's Fees and Costs**

QED, doing business as Q2 Impact, protested its disqualification from eligibility for a contract under a large solicitation issued by the General Services Administration.[1] The parties requested a statutory interpretation, arguing that the court's interpretation would resolve the dispute, and the court issued a decision agreeing with the interpretation proposed by Q2 Impact. Now that the case has been finally resolved, Q2 impact requests attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. The government responds that its position in the case was substantially justified, so Q2 Impact is not entitled to fees and costs. The government's position in this case was substantially justified. Thus, the court will deny Q2 Impact's motion for attorney's fees and costs.

---

[1] This opinion was originally issued under seal on July 21, 2025. The parties had no proposed redactions. The court reissues the opinion publicly.

## I.     Background

The merits of this case turned on the meaning of section 889 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019, which prohibits government agencies from contracting with any entity that uses certain high-risk telecommunications equipment or services in its work. Section 889 allows waivers under some conditions. Pub L. No. 115-232, § 889(d)(1)-(2). Section 889(d)(1) allows executive agency heads to issue waivers, and section 889(d)(2) allows the Director of National Intelligence (DNI) to issue waivers. *Id.*

Here, the DNI issued a waiver allowing contractors, including Q2 Impact, to connect to telecommunications equipment covered by section 889 for a USAID contract in Egypt, where Egypt had no compliant telecommunications service providers. ECF No. 1 at 7-8 [¶¶27-31]. The waiver was valid through 2028. *Id.* at 7 [¶28].

Q2 Impact later bid on GSA's One Acquisition Solution for Integrated Services Plus (OASIS+) program. *See generally* ECF No. 1. Q2 Impact did not propose to use covered equipment for OASIS+ but disclosed that it used covered equipment for its USAID contract in Egypt. GSA disqualified Q2 Impact from the OASIS+ program, explaining that Q2 Impact's existing DNI waiver covered only the USAID contract, not GSA's proposed contract, and GSA was prohibited under section 889 from contracting with Q2 Impact. *Id.* at 8-10 [¶¶32-40]. Q2 Impact filed a bid protest challenging that disqualification. Q2 Impact argued that its disqualification was based on an incorrect reading of section 889 and that it could still contract with GSA despite its use of covered equipment for its USAID contract. The parties requested that the court interpret the statute. The specifics of the parties' dispute are covered in detail in this court's opinion in *QED Group LLC v. United States*, 175 Fed. Cl. 349 (2025), which is available at ECF No. 39.

The court agreed with the interpretation proposed by Q2 Impact, holding that GSA was not prohibited from contracting with Q2 Impact under section 889. *See* ECF No. 39. The court concluded that GSA's decision to disqualify Q2 Impact from the OASIS+ program was based on a misinterpretation of section 889, granted Q2 Impact's motion for a permanent injunction, and ordered GSA to reevaluate Q2 Impact's proposal under the court's interpretation of the statute. *Id.*; ECF No. 38 at 5. After the reevaluation, GSA made an award to Q2 Impact, and the parties filed a joint stipulation of dismissal. ECF No. 55.

Q2 Impact now moves for attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. *See* ECF No. 56.

## II.    The government's position in this litigation was substantially justified

Q2 Impact argues that it satisfies the EAJA requirements and is entitled to $73,599.93 in fees and costs plus an additional $8,812.68 for preparation of its fee motion. ECF No. 56 at 19; ECF No. 60 at 19.[2] The government argues that GSA's position in the litigation was substantially justified, so Q2 Impact is not entitled to recover attorney's fees and costs. *See* ECF No. 59.

EAJA provides the Court of Federal Claims with the authority to award attorney's fees and costs in actions over which it has jurisdiction. 28 U.S.C. § 2412(a)(1); *see Burkhardt v. Gober*, 232 F.3d 1363, 1367 (Fed. Cir. 2000). To recover under EAJA, among other things, "the party applying for fees and expenses [must have] prevailed" in a case in which "the position of the

---

[2] Q2 Impact filed its reply brief, ECF No. 60, a week after the deadline, and did not seek an extension of that deadline. *See* Rules 7.2(a)(2) and 6(b), Rules of the Court of Federal Claims (setting a deadline of one week for a reply brief, which fell on June 30, 2025, and requiring a motion to extend time after the deadline; Q2 Impact filed its brief on July 7, 2025). As there is no prejudice to the government, the court has nevertheless considered Q2 Impact's reply brief, despite the delay. *See Cohen v. Board of Trustees of the University of the District of Columbia*, 819 F.3d 476, 481-84 (D.C. Cir. 2016) (discussing "the clear preference of the Federal Rules to resolve disputes on their merits").

United States was not substantially justified." *Burkhardt*, 232 F.3d at 1367; *see* 28 U.S.C.
§ 2412(d)(1)(A).

"The government bears the burden of establishing that its position was substantially justi-
fied." *Patrick v. Shinseki*, 668 F.3d 1325, 1330 (Fed. Cir. 2011) (citation omitted). An EAJA award
is precluded if the government shows its position to be "justified in substance or in the main—that
is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S.
552, 565 (1988) (quotation marks omitted). When determining whether the government's position
was substantially justified, the court does not examine the government's stance on every individual
issue in the case but rather determines "whether the government's overall position had a reasonable
basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 714-15 (Fed. Cir. 1991). The
government's position could be substantially justified even if it was ultimately incorrect. *KWV,
Inc. v. United States*, 113 Fed. Cl. 534, 538 (2013); *see Stillwell v. Brown*, 46 F.3d 1111, 1113
(Fed. Cir. 1995) ("This quintessentially discretionary inquiry necessarily involves the determina-
tion of facts and the application of the substantially justified standard of the EAJA to those facts."
(cleaned up)). "[S]ubstantial justification occurs somewhere between winning the case and being
'merely undeserving of sanctions for frivolousness.'" *Dalles Irrigation District v. United States*,
91 Fed. Cl. 689, 697 (2010) (quoting *Pierce*, 487 U.S. at 566).

The government argues that, although its statutory interpretation did not prevail, its posi-
tion was reasonable, supported by law and fact, and substantially justified because GSA had ap-
plied the same interpretation of section 889 since the statute's enactment. ECF No. 59 at 7. The
government adds that, as the court acknowledged, "[n]either the statutory text nor the accompany-
ing regulation at issue … directly addresses the interpretive issue in this case" (*id.* (quoting ECF
No. 39 at 11)), so GSA operated under the assumption that the language and guidance provided by

the Federal Acquisition Regulation (FAR) and the Federal Register regarding section 889(d)(1) similarly applied to section 889(d)(2). ECF No. 59 at 8. Q2 Impact argues that GSA's position was not substantially justified because it "focused its interpretation of the scope of Section 889 prohibitions and waivers on the wrong statutory clause, advanced a reading of Section 889 that was at odds with the plain text and meaning of the statute and implementing regulations, and completely failed to present GSA guidance that was [consistent] with its interpretation." ECF No 56 at 18. Therefore, Q2 Impact argues, GSA's position did not have a "reasonable basis in law or fact." *Id.* (citing *Chiu*, 948 F.2d at 711).

GSA's interpretation of section 889(d)(2), while ultimately incorrect, had a reasonable basis in law and fact. *See Chiu*, 948 F.2d at 715 (The court is tasked with "look[ing] at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact."). Indeed, this court noted that section 889(d)(2) "is brief … [and] does not address whether a DNI waiver allowing an entity to use covered equipment in performing a contract with one agency means that other agencies are prohibited from contracting with that entity." ECF No. 39 at 11. The court also pointed out that the FAR and the Federal Register "discussed and addressed only the agency-head waiver process," and neither "released considered guidance related to" section 889(d)(2). *Id.* at 12-13. The court further noted "limited real-world examples" applying section 889(d)(2) on which either party could rely. *Id.* at 14.

GSA, not having much to work with, analogized to section 889(d)(1) to try to interpret section 889(d)(2) in a manner consistent with the concerns suggested by Congress. For example, the government noted Congress's intent to avoid national security threats, particularly cybersecurity threats, with section 889. ECF No. 17 at 16-17 (citing *Huawei Technologies USA, Inc. v.*

5

*United States*, 440 F. Supp. 3d 607, 638-39 (E.D. Tex. 2020)). The court acknowledged this "understandabl[e]" concern and, while disagreeing with the government's statutory interpretation, noted that agencies have room to create carve-outs for security-sensitive solicitations. ECF No. 39 at 16-17. The government's approach to interpreting section 889(d)(2) was substantially justified, as it was concerned with the core purposes of the statute and relied on the limited guidance in the FAR and the Federal Register. *See generally KWV, Inc.*, 113 Fed. Cl. at 538-39 (finding the government's position substantially justified even when it improperly relied on an administrative decision).

The government argues that this case raised a novel statutory interpretation, further justifying the government's interpretation. ECF No. 59 at 6 (citing, among others, *Norris v. Securities and Exchange Commission*, 695 F.3d 1261, 1265 (Fed. Cir. 2012)). While a novel interpretive issue may imply that there are multiple reasonable interpretations, as Q2 Impact points out (ECF No. 60 at 1 & n.2; *id.* at 12-14), it is also possible that an interpretation becomes necessary only because the government for the first time took an unreasonable position, which it had never taken before, on the meaning of a statute. Thus, the court does not weigh the novelty of the issue in either party's favor here.

While Q2 Impact notes that it is a small business struggling to stay afloat and incurred significant fees because of having to litigate here (ECF No. 60 at 2), EAJA shifts fees only when the government's position is not substantially justified. Because the government advanced a substantially justified interpretation of the statute, the court will deny Q2 Impact's motion for attorney's fees and costs under EAJA.

## III.    Conclusion

For the reasons stated above, this court **denies** Q2 Impact's motion for attorney's fees and costs.

7

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge